**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Scott Osborne, | No. CV-22-00744-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

On May 2, 2022, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("the Petition"). (Doc. 1.) On October 5, 2022, Magistrate Judge Willett issued a Report and Recommendation ("R&R") concluding that the Petition should be denied in part and dismissed in part. (Doc. 8.) Afterward, Petitioner filed objections to the R&R (Doc. 22) and Respondents filed a response (Doc. 24). Petitioner also filed a motion for a certificate of appealability. (Doc. 23.) For the following reasons, the Court overrules Petitioner's objections, adopts the R&R, denies the request for a certificate of appealability, and terminates this action.

I.     Background

*Trial Court Proceedings*.   On November 6, 2015, a Maricopa County grand jury returned an indictment charging Petitioner with two counts of molestation of a child, seven counts of sexual conduct with a minor, and one count of sexual abuse. (Doc. 7-1 at 3-6.) All of the counts involved allegations of sexual contact between Petitioner and his stepdaughter, who was identified as Victim A. (*Id.*) As relevant here, Count One alleged

that Petitioner engaged in "rubbing outside of clothes" at some point between December 30, 2004 and December 29, 2005; Count Three alleged that Petitioner engaged in "penis in mouth" at some point between January 1, 2008 and December 30, 2008; and Count Four alleged that Petitioner engaged in "finger in vagina" at some point between December 30, 2007 and December 29, 2008. (*Id.* at 4-5.) Some of the other Counts alleged sexual contact with Victim A in 2009, 2010, and 2011. (*Id.* at 5-6.)

On August 22, 2016, Petitioner's counsel sent a so-called "*Trebus* letter" to the assigned prosecutor. (Doc. 7-5 at 104-16.)[1] In the letter, Petitioner requested an opportunity to be heard before the grand jury, identified some anticipated defenses, and identified various pieces of purportedly exculpatory evidence. (*Id.*) Among other things, the letter asserted that Count One was flawed because "[b]ased on a complete review of all the information provided in the State's discovery, it has been established as fact that [Victim A] did not reside in Arizona until 2007"; that Count Three was flawed because Victim A's accounts of the incident were inconsistent and uncorroborated and because, according to Victim A's account, the incident could not have occurred until at least June 2008; and that Count Four was flawed because, based on Victim's A account of the incident, it could not have occurred until 2011, at which time Victim A was no longer under 15 years old. (*Id.* at 107-09.)

On September 7, 2016, a settlement conference took place. (Doc. 7-5 at 49-86.) At the outset of the conference, the judge explained that "if your case goes to trial, the State's going to go back and attempt to re-indict you, to change the nature of the charges based on the victim being here in Arizona. . . . [T]hey're going to look somewhat similar to what's in the indictment, but some of the date ranges in the indictment right now [will change because] everyone kind of acknowledges the victim wasn't in Arizona." (*Id.* at 51-52.) Later, when discussing Count One, the judge again explained that the indictment included

---

[1] In *Trebus v. Davis*, 944 P.2d 1235 (Ariz. 1997), the Arizona Supreme Court held that, "[g]iven the power of the prosecutor in the grand jury system, the statutory right of the grand jury to decide whether to hear evidence from the defendant, and the defendant's right to request appearance before the grand jury, we hold the county attorney must inform the grand jury that the defendant has requested to appear or has submitted exculpatory evidence." *Id.* at 1239.

the "date ranges of 2005 and 2004.  And everyone kind of recognizes that the victim was not in Arizona at that time." (*Id.* at 54.)  Similarly, when the prosecutor spoke to Petitioner, the prosecutor stated: "So certainly, prior to being here today, I worked with your attorney in talking about why the dates in the indictment are wrong, and we can agree with that. But we'll be able to establish that [Victim A] got here when she was 14 through our investigators, and that will be important in proving our case . . . ." (*Id.* at 70.)  The prosecutor also noted that, during a taped confrontation call, Petitioner had "admit[ted] to having sex with [Victim A] in the Surprise house" and suggested that, in light of that admission, "it's going to be very hard for a juror to hear this confrontation call, and hear that [Victim A] made these allegations when she was very little, and then try and believe that she was making all of this up, especially for the counts where she was 14." (*Id.* at 72.)

On September 14, 2016—just one week after the settlement conference—Petitioner entered into a plea agreement in which he agreed to plead guilty to one count of molestation of a child (Count One, amended), one count of attempt to commit molestation of a child (Count Three, amended), and one count of attempt to commit sexual conduct with a minor (Count Four, amended).  (Doc. 7-5 at 9-13 [plea agreement]; *id.* at 15-16 [minute entry from change-of-plea hearing].)  The plea agreement provided that, for all three counts, the victim's date of birth was December 30, 1993 and the crime was "committed on January 1, 2008 through and including December 30, 2008." (*Id.* at 9.)  The plea agreement also clarified that each count was "amended" in relation to the indictment (*id.*), and Petitioner avowed elsewhere in the plea agreement that he understood that "[t]his agreement serves to amend the complaint, indictment, or information, to charge the offense to which the Defendant pleads, without the filing of any additional pleading." (*Id.* at 11.)  The plea agreement provided that Petitioner would receive a sentence of "10 to 17 years flat time" as to Count One and a sentence of lifetime probation as to the other two counts. (*Id.* at 10-11.)  Petitioner avowed that had "read and understood the provisions of . . . this agreement" and "underst[oo]d it fully" and that his plea was "voluntary and not the result of force, or threat, or promises other than those contained in the plea agreement." (*Id.* at 12.)  Petitioner

- 3 -

also agreed to "waive[] and [give] up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment and imposition of a sentence upon him consistent with this agreement." (*Id.* at 11.)

On November 9, 2016, the trial court sentenced Petitioner to a 15-year prison term, followed by lifetime probation. (Doc. 8 at 2.)

*PCR Proceeding*. After sentencing, Petitioner timely filed a Notice of Post-Conviction Relief ("PCR"). (*Id.*) On September 5, 2019, through counsel, Petitioner filed a PCR petition. (*Id.*) The trial court later summarily dismissed the petition. (*Id.*) Petitioner then sought further review by the Arizona Court of Appeals.

On November 10, 2020, the Arizona Court of Appeals granted Petitioner's petition for review but denied relief. *State v. Osborne*, 2020 WL 6578367 (Ariz. Ct. App. 2020).

On May 4, 2021, the Arizona Supreme Court denied Petitioner's request for further review. (Doc. 8 at 2.)

*This Action*. On May 2, 2022—less than one year after the conclusion of the PCR proceeding—Petitioner initiated this action by filing the Petition. (Doc. 1.) The Court previously explained that the Petition "appears to raise three grounds for relief"—specifically, (1) "the statutory scheme construction of A.R.S. § 13-705 is unconstitutional as it caused [Petitioner's] sentence to be double enhanced"; (2) "[Petitioner's] Sixth Amendment rights to counsel were violated when his counsel failed to object to allegations that were outside of the indictment's timeline"; and (3) "the factual basis of Counts One and Three was insufficient [to] convict [Petitioner] as it includes a time period when the victim was over the age of 15 and it fails to establish that [Petitioner] acted with sexual intent." (Doc. 3 at 1-2.) In a footnote, the Court added: "Although all of Petitioner's claims are organized under section 'V. Ineffective Assistance of Counsel,' it appears that he only intends subsection (b) to be a claim of ineffective assistance of counsel. Accordingly, subject to any clarification from counsel for Petitioner, the Court will direct Respondents to answer the grounds for relief set forth herein as individual, stand-alone grounds for relief rather than as instances of ineffective assistance of counsel." (*Id.* at 1 n.1.)

*The R&R.*  The R&R concludes that the Petition, although timely filed, should be denied in part and dismissed in part.  (Doc. 8.)  First, the R&R explains that, to the extent Petitioner is alleging that he received ineffective assistance of counsel ("IAC") during the plea process, such claims are potentially cognizable because they go to the voluntariness of Petitioner's guilty plea.  (*Id.* at 6.)  The R&R further explains that Petitioner appears to be raising three discrete claims of IAC during the plea process: (1) his counsel failed to share the *Trebus* letter with him, which caused him to be unprepared and uninformed to enter into the plea agreement; (2) his counsel allowed him to plead guilty to charges for which he was never indicted; and (3) his counsel failed to correct errors in the plea agreement regarding Victim A's age and Arizona's lack of jurisdiction.  (*Id.* at 6-7.)  The R&R concludes that, although Petitioner exhausted these claims in state court, he is not entitled to relief because the state court's rejection of the claims was not contrary to, or involve an unreasonable application of, clearly established federal law (*i.e., Strickland v. Washington*, 466 U.S. 668 (1984)), and was not an unreasonable determination of the facts based on the evidence in the record.  (*Id.* at 7-10.)  On this point, the R&R emphasizes that Petitioner admitted, during the change-of-plea hearing, that his plea was knowing and voluntary; that Petitioner was specifically advised, during the settlement conference, that some of the dates in the indictment were incorrect but that the prosecution planned to obtain a corrected indictment if he insisted on going to trial; and that there is circumstantial evidence that Petitioner was aware of the issues raised in the *Trebus* letter.  (*Id.*)

Turning to Petitioner's remaining claims, the R&R concludes they all lack merit because they "have been waived by Petitioner's guilty plea."  (*Id.* at 10-14.)  More specifically, as for Petitioner's contention that A.R.S. § 13-705 is unconstitutional because it allows sentences to be double enhanced, the R&R concludes this claim is unavailing because Petitioner agreed in the plea agreement that he could receive a sentence of up to 17 years, further agreed to waive any sentencing challenges should he receive a sentence that was permitted under the plea agreement, and ultimately received such a sentence when the trial court imposed a 15-year term.  (*Id.* at 10-11.)  As for Petitioner's contention that

he received various forms of IAC during the pre-plea process (*i.e.*, failing to move to remand his case to the grand jury, various errors during the initial appearance, other pre-plea errors and omissions, and failing to move to dismiss the indictment), the R&R concludes that these claims, too, are waived because they do not implicate the voluntariness of his guilty plea. (*Id.* at 11-13.)  Finally, as for Petitioner's challenge to the sufficiency of the factual basis in the plea agreement, the R&R concludes that this claim fails not only because Petitioner's habeas petition fails to allege a violation of a federal law, but also because "Petitioner's responses at the change of plea hearing reflect that Petitioner was aware of the nature of the charges to which he was pleading guilty," because there is no federal constitutional right to a factual basis for a guilty plea, and because any error "has been waived by Petitioner's guilty plea."  (*Id.* at 13-14.)

II.      Legal Standard

        A party may file written objections to an R&R within fourteen days of being served with a copy of it.  Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules").  Those objections must be "specific."  *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *See* Fed. R. Civ. P. 72(b)(3).

        District courts are not required to review any portion of an R&R to which no specific objection has been made.  *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise.").  Thus, district judges need not review

an objection to an R&R that is general and non-specific.  *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").

III.    Analysis

      A.    **Double Enhancement**

Petitioner's first objection concerns his theory that his sentence was illegal because it was the product of an "unlawful double enhancement."  As noted, the R&R concluded that Petitioner cannot seek relief under this theory because he waived any right to bring a sentencing-related challenge by pleading guilty and receiving a sentence that was permissible under the plea agreement.  Petitioner's objections mostly focus on why his double-enhancement theory should prevail on the merits.  (Doc. 22 at 3-4.)  His only response to the R&R's finding of waiver is that his "claim, as a sentencing issue, cannot antedate the plea.  Additionally, the waivers by pleading guilty, whether express or implied, do not and cannot bar an unlawful sentence claim.  Whether [Petitioner] agreed to the unconstitutional enhancement provision in his plea does not bar him from challenging the constitutionality of the statute he was sentenced under."  (*Id.* at 3, citing *Coy v. Fields*, 27 P.3d 799 (Ariz. Ct. App. 2001).)  In response, Respondents make three arguments: (1) Petitioner "cites no legal authority to support []his assertion" that illegal sentence claims are immune from waiver; (2) alternatively, Petitioner's claim fails on the facts because Petitioner specifically agreed to waive sentencing-related claims in his plea agreement; and (3) Petitioner "fails to address or refute the state court finding that [his] sentence was not enhanced twice [because] [t]he Legislature created two separate offenses for molestation and sexual abuse."  (Doc. 24 at 1-2.)

Petitioner is not entitled to relief based on his double-enhancement challenge. Multiple courts have held that when (as here) a defendant knowingly and voluntarily enters into a plea agreement that authorizes a certain sentence, agrees to waive "any and all

motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the . . . imposition of a sentence upon him consistent with this agreement" (Doc. 7-1 at 11), and subsequently receives the agreed-to sentence, the defendant is barred from challenging the sentence via a habeas proceeding. *See, e.g., Crockett v. Neotti*, 2011 WL 2181384, *6-7 (E.D. Cal. 2011) ("[P]etitioner's agreement to a specific sentence as part of a negotiated plea bargain precludes his challenge to his sentence. . . . Accordingly, petitioner is not entitled to federal habeas relief with respect to his Sixth Amendment and due process challenges to his sentence.") (citing cases); *Schenck v. Ryan*, 2013 WL 6628140, *5 (D. Ariz. 2013) ("Petitioner's sentence was also clearly consistent with the terms of the plea agreement.  To the extent Petitioner challenges his judgment and sentence in this regard, the Court finds that Petitioner waived any objection thereto."); *Terhune v. Lizarraga*, 2017 WL 2345553, *11 (E.D. Cal. 2017) ("The sentence was already agreed upon by the parties, and the court was bound to impose that sentence.  Likewise, there was no indication that Petitioner lacked competence, and he had already pleaded guilty. . . . Petitioner fails to demonstrate that the state court rejection of his claim of an illegal sentence was contrary to or an unreasonable application of clearly established Supreme Court authority.").

Alternatively, even assuming *arguendo* that this claim isn't barred by waiver principles (which was the R&R's rationale for rejecting it), it would fail for other reasons. In his PCR petition, Petitioner raised various reasons why his sentence was erroneous as a matter of *Arizona* law.  (Doc. 7-2 at 8 ["Here, the situation falls between the [Arizona] cases of *Samano* and *Hancock*, but the result is the same.  In both cases presented above, the State attempted to enhance the Defendant's sentence twice based upon a single factor. Whether this was presented as an aggravated factor or a qualifying factor for statutory enhancement, Arizona Courts have ruled that neither is proper.  Under *State v. Williams*, the Supreme Court of Arizona found that in order for the DCAC statute to be applied, there must be something more found than just the age of the victim."]; *id.* at 9 ["Without any additional findings to support further enhancement, the offenses were designated as

dangerous crimes against children and enhanced once more to fall under the DCAC sentencing scheme.  This is contradictory to the holdings of both *Samano* and *Hancock* . . . .  [T]he enhancement under the DCAC must be vacated and the sentencing scheme under A.R.S. § 13-702 should be applied.  Without the application of the DCAC statute, the sentencing applied to Mr. Osborne's case exceeds the statutory limitations in place under A.R.S. § 13-702."].)  Although the headings in the PCR petition suggested that the double enhancement was "unconstitutional" and "in violation of the Constitution" (*id.* at 6), and the conclusion section of the PCR petition alluded to the "improper double enhancement" as a "violation of Due Process Rights" (*id.* at 24), the petition never specifically developed any claim of *federal* constitutional error and only cited state-law cases in support of the enhancement-related challenge.  Similarly, in his reply brief, Petitioner emphasized the state-law nature of his challenge.  (*Id.* at 198 ["Ground (1) for relief contain within the petition is a matter of question of law in relation to the statutory construction of A.R.S. § 13-705.  Specifically, it is argued the provision unconstitutionally authorizes the double counting or a victim's age thereby substantially increasing the sentencing package in excess of Arizona's first-time felony sentencing in A.R.S. § 13-702.  As such, Ground One pertains to fundamental error based on an illegal sentence claim in relation to the [DCAC] double enhancement."].)

Petitioner took a similar approach in his petition for review to the Arizona Court of Appeals.  Petitioner's argument was that the imposition of "an enhanced term of fifteen years in prison under the DCAC enhancement statute rather than the standard sentence for first time offenders" was impermissible as a matter of state law and "contradictory to the holdings of both *Samano* and *Hancock*."  (Doc. 7-3 at 18.)  Petitioner only cited one federal case, *Boiue v. City of Columbia*, 378 U.S. 347 (1964), in the relevant section of his appellate petition, arguing that *Bouie* stood for the proposition "that a judicial expansion of statutory language can violate a defendant's due process right to fair warning."  (*Id.* at 15.)

In the decision denying Petitioner's petition for review, the Arizona Court of Appeals interpreted Petitioner's enhancement challenge as raising a state-law claim.  The

court rejected that challenge on the merits, concluding that Petitioner's understanding of state law was mistaken. *Osborne*, 2020 WL 6578367 at *2 ("Osborne argues that his sentence is illegal, claiming it was enhanced twice by the age of the victim. Osborne's argument and his reliance on our decision in [*Samano*] are unavailing. The statutes Osborne was charged with expressly permit DCAC sentencing enhancements. Additionally, the Arizona Supreme Court has repeatedly upheld the validity of the DCAC sentencing enhancements on molestation of a child and sexual conduct with a minor. Osborne fails to argue how these offenses were not targeted against the victim, thus, the DCAC sentencing enhancements were appropriate.") (citations omitted).

Given this backdrop, Petitioner cannot obtain habeas relief based on his double-enhancement challenge. As an initial matter, to the extent Petitioner now seeks to repackage his double-enhancement challenge as a federal claim (Doc. 1 at 7; Doc. 22 at 3-4; Doc. 23 at 5 [referring, for the first time, to "the Fifth Amendment"]), there is a strong argument that this approach is impermissible in light of Petitioner's reliance on state-law authorities during the PCR proceedings and failure to raise and develop any independent federal challenge during those proceedings. *Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004) ("Casey suggests that because he discussed 'constitutional error' in the state appellate court regarding his hearsay claim—and made a bare reference to 'depriv[ation] of a fair trial' regarding his prosecutorial misconduct claim—he fairly presented the federal constitutional issues in both instances. We are not persuaded that such a vague appeal, bolstered only by state law cases that focused on state procedural or state constitutional error, can be said to have fairly presented federal constitutional issues. Even where a petitioner argues that an error deprived him of a 'fair trial' or the 'right to present a defense,' unless the petitioner clearly alerts the court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim."). But even assuming that Petitioner properly raised and exhausted a federal challenge, that challenge would not give rise to relief on the merits. Construed generously, Petitioner's theory is that the Arizona courts' misinterpretation of their own sentencing provisions has resulted

1   in a federal due process violation.  But a habeas petitioner may not "transform a state-law

2   issue into a federal one merely by asserting a violation of due process.  [Federal courts]

3   accept a state court's interpretation of state law, and alleged errors in the application of

4   state law are not cognizable in federal habeas corpus."  *Langford v. Day*, 110 F.3d 1380,

5   1389 (9th Cir. 1996) (citations omitted).  *See also Swarthout v. Cooke*, 562 U.S. 216, 222

6   (2011) ("[W]e have long recognized that a mere error of state law is not a denial of due

7   process.") (citations and internal quotation marks omitted); *Wilson v. Corcoran*, 562 U.S.

8   1, 4 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal

9   judgment susceptible to collateral attack in the federal courts. . . .  [W]e have repeatedly

10   held that federal habeas corpus relief does not lie for errors of state law.  It is not the

11   province of a federal habeas court to reexamine state-court determinations on state-law

12   questions.") (cleaned up).

13       B.   **IAC**

14       Petitioner next raises various objections to the R&R's conclusion that he is not

15   entitled to relief based on his IAC claims.

16       As noted, one of those claims is that counsel was ineffective by failing to allow

17   Petitioner to review the *Trebus* letter (or otherwise failing to communicate the contents of

18   the *Trebus* letter to Petitioner) before Petitioner pleaded guilty.  The R&R concludes that

19   this although this claim is not foreclosed by the plea agreement (because it goes to the

20   voluntariness of the plea), it fails on the merits.  In his objections, Petitioner argues that the

21   reference in the *Trebus* letter to Petitioner's desire to testify "alone does not show that

22   [Petitioner] was aware of the information contained in the Trebus letter" and "in no way

23   shows [Petitioner's] *knowledge* of the information contained in the rest of the document."

24   (Doc. 22 at 4-5, 7-9.)  In response, Respondents defend the R&R's analysis.  (Doc. 24 at

25   2.)

26       The Court agrees with the R&R's analysis on this issue.  Although Petitioner

27   contends he was ignorant of the contents of the *Trebus* letter, the transcript from the

28   settlement conference shows that Petitioner was present while many of the potential issues

raised in the *Trebus* letter (and the prosecution's plan to address those issues should Petitioner go to trial) were discussed.  Additionally, Petitioner admitted, during the change-of-plea hearing, that his plea was knowing and voluntary.  Accordingly, the state court's basis for rejecting this claim—"[T]he record shows that the parties were aware of the issues in the indictment.  During the settlement conference, the State indicated its willingness to amend the indictment should the case go to trial, noting that any change to the indictment would still carry a DCAC allegation. . . .  Petitioner makes general claims of poor communication with counsel, asserting that he would not have entered the plea had he been properly advised by counsel.   But without more than mere generalizations and unsubstantiated claims, [Petitioner] fails to state a colorable claim of IAC," *Osborne*, 2020 WL 6578367 at *1-2—did not involve an unreasonable application of *Strickland* or an unreasonable determination of the facts based on the evidence in the record.

For the same reasons, the Court agrees with the R&R's rationale for rejecting Petitioner's IAC claims premised on trial counsel's failure to correct the purported errors in the plea agreement regarding the victim's age and trial counsel's decision to allow Petitioner to plead guilty to charges for which he was never indicted.  In his objections, Petitioner argues that the R&R's analysis is flawed because there is now "unequivocal" evidence that the victim did not move to Arizona until she was 15 years old and, thus, counsel effectively allowed Petitioner to "plead[] guilty to charges that he cannot be guilty of." (Doc. 22 at 5-6, 7-9.)  But as Respondents correctly note, Petitioner "cites nothing in the record to establish that 'unequivocal' evidence exists to show that the victim arrived in 2009" and, at any rate, Petitioner "does not allege that counsel knew about that purported evidence at the time of his plea or *Trebus* letter and, as such, there could be no basis from which to conclude that counsel rendered ineffective assistance." (Doc. 24 at 4-5.)  The bottom line is that Petitioner was specifically advised, during the settlement conference, that some of the dates in the indictment were incorrect but that the prosecution planned to obtain a corrected indictment if he insisted on going to trial.  *Osborne*, 2020 WL 6578367 at *1 ("During the settlement conference, the State indicated its willingness to amend the

1    indictment should the case go to trial, noting that any change to the indictment would still

2    carry a DCAC allegation.").  Soon afterward, Petitioner agreed to plead guilty to amended

3    charges premised in part on different date ranges.  Petitioner certified that his plea was

4    knowing and voluntary and also certified that he was willing to plead guilty to the amended

5    charges without requiring the prosecution to secure a new indictment.  Under these

6    circumstances, the state court's rejection of the IAC claims did not involve an unreasonable

7    application of *Strickland* or an unreasonable determination of the facts based on the

8    evidence in the record.

9            Finally, as Petitioner's IAC claims premised on counsel's failure to file a motion to

10   remand to the grand jury, failure to work on the case after the initial appearance, and failure

11   to file a motion to dismiss the indictment, the Court agrees with the R&R's conclusion that

12   all of these claims are waived by virtue of the plea agreement because they "do not

13   challenge the advice given by [Petitioner's] counsel regarding the plea agreement" and "do

14   not implicate the voluntariness of his guilty plea."  (Doc. 8 at 12.)[2]  In his objections,

15   Petitioner seeks to avoid the waiver finding by characterizing each of these challenges as

16   "jurisdictional."  (Doc. 22 at 6-9.)   In response, Respondents argue, *inter alia*, that

17   Petitioner "points to no legal authority for applying a jurisdiction exception under the facts

18   of this case."  (Doc. 24 at 5-6.)  The Court agrees with Respondents.  Although "narrow

19   exceptions" exist to the rule that a knowing and intelligent guilty plea forecloses

20   independent claims of pre-plea constitutional violations, the Ninth Circuit "has held that

21   such claims are limited to claims that the statute is facially unconstitutional; or that the

22   indictment failed to state a valid claim; or vindictive prosecution; or possibly selective

23   prosecution."  *United States v. Johnston*, 199 F.3d 1015, 1019 n.3 (9th Cir. 1999).  The

24   claims that Petitioner seeks to raise here do not fall within those categories.

25   _____

26   [2]      *See generally Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[A] guilty plea
     represents a break in the chain of events which has preceded it in the criminal process.
27   When a criminal defendant has solemnly admitted in open court that he is in fact guilty of
     the offense with which he is charged, he may not thereafter raise independent claims
28   relating to the deprivation of constitutional rights that occurred prior to the entry of the
     guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea
     . . . .").

1        Alternatively, even if these claims were theoretically cognizable, they would fail on

2    the merits for the same reasons as Petitioner's other, non-waived IAC theories.

3        C.        **Factual Basis**

4        The R&R concluded that, for various reasons, Petitioner is not entitled to habeas

5    relief based on his challenge to the sufficiency of the factual basis underlying his plea.  In

6    his objections, Petitioner disputes the R&R's conclusion that his habeas petition fails to

7    allege the required violation of federal law, arguing that his citations to Federal Rule of

8    Criminal Procedure 11(f) and *North Carolina v. Alford*, 400 U.S. 25 (1970), were

9    sufficient.  (Doc. 22 at 9.)  On the merits, Petitioner argues that the factual basis was

10   deficient because the stated date range for each count of conviction (January 1, 2008

11   through December 30, 2008), when considered in conjunction with the victim's stated date

12   of birth (December 30, 1993), left open the possibility that each offense was committed on

13   the last day of the range, at which point the victim would have been 15 years old.  (*Id.*at 9-

14   10.)  In response, Respondents argue that Petitioner's citations to Rule 11 and *Alford* "fail[]

15   to establish a federal basis for [t]his claim, which asserts that not all of the elements of

16   [Petitioner's] state-law criminal claims were recited at his change-of-plea hearing.  The

17   R&R correctly concludes that [Petitioner] failed to allege a violation of federal law in this

18   claim."  (Doc. 24 at 7.)

19       Petitioner's factual basis theory is unavailing.  Even assuming, for the sake of

20   argument, that Petitioner attempted to assert a federal challenge in his habeas petition

21   premised on this theory, any such challenge would fail on the merits.  Absent exceptions

22   that are inapplicable here, there is no federal requirement that a state-court guilty plea be

23   accompanied by a factual basis.  *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985)

24   ("In federal court, the requirement that there be a factual basis for a guilty plea arises from

25   Federal Rule of Criminal Procedure 11(f).  The question is whether the due process clause

26   contains a similar requirement binding on the states.  We conclude that the due process

27   clause does not impose on a state court the duty to establish a factual basis for a guilty plea

28

absent special circumstances.").[3]  Thus, any claim for habeas relief premised on purported inadequacies in the factual basis is unavailing.  *Loftis v. Almager*, 704 F.3d 645, 647-48 (9th Cir. 2012) ("The Constitution requires that a plea be knowing, intelligent, and voluntary.  The record must show that the defendant voluntarily relinquished his privilege against self-incrimination, his right to trial by jury and his right to confront his accusers, and that he understood the nature of the charges and the consequences of his plea.  Beyond these essentials, the Constitution does not impose strict requirements on the mechanics of plea proceedings.  While Fed. R. Crim. P. 11 and its state analogs require additional safeguards, violations of such rules do not ordinarily render a plea constitutionally infirm and thus vulnerable to collateral attack.  Among the requirements imposed on trial judges by rule—but not the Constitution—is the finding of a factual basis.  Accordingly, habeas courts have held that, unless a plea is accompanied by protestations of innocence or other 'special circumstances,' the Constitution does not require state judges to find a factual basis.  Loftis cannot obtain habeas relief because the state trial court's failure to find a factual basis for his no contest plea—unaccompanied by protestations of innocence—does not present a constitutional issue cognizable under 28 U.S.C. § 2254.") (citations and internal quotation marks omitted).

Alternatively, and at any rate, the state court did not unreasonably determine that the record supplied an adequate factual basis for Petitioner's plea.  *Osborne*, 2020 WL 6578367 at *2 ("Osborne next argues that there was no factual basis to support the plea . . . because the last day of the date range on the plea included the victim's fifteenth birthday.  But the date range included dates supporting the DCAC allegation, and based on the record before us, we cannot say that the factual basis was deficient.").

…

…

---

[3]  As the Ninth Circuit has noted, "a defendant's specific protestation of innocence . . . might impose on a state court the constitutional duty to make inquiry and to determine if there is a factual basis for the plea." *Rodriguez*, 777 F.2d at 528.  But here, there was no such protestation.  During the change-of-plea hearing, Petitioner stated without equivocation that he was "Guilty" of each charge and also confirmed the accuracy of the factual basis provided by his counsel.  (Doc. 7-5 at 97-99.)

Accordingly, **IT IS ORDERED** that:

1.      Petitioner's objections to the R&R (Doc. 22) are **overruled**.

2.      The R&R (Doc. 8) is **accepted**.

3.      The Petition (Doc. 1) is **denied in part and dismissed in part**.

4.      The motion for a Certificate of Appealability (Doc. 23) is **denied**.

5.      A Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are **denied** because Petitioner has not made a substantial showing of the denial of a constitutional right.

6.      The Clerk shall enter judgment accordingly and terminate this action.

Dated this 3rd day of April, 2023.

Dominic W. Lanza
United States District Judge